Gkeen, J.
delivered the opinion of the court.
The only question in this case, which it becomes material to consider, is as to the validity and effect of the mortgage executed by Lucas to Dotson on the 3d of January, 1842, for the negroes Frank, Ben, Green, Polly, Mima, George and Mary. It is insisted by the complainants, who are creditors of Lucas, that the deed is fraudulent and void, and cannot stand as a security for debts really due from Lucas to Dotson.
The deed recites that it is made to secure various debts due Dotson and liabilities which he was under as the security for Lucas — among which latter, the deed recites, that Dotson was bound for Lucas, and liable to pay as his security, as the guardian of the heirs of Samuel Johnson, about $2,000; and the entire sum for which the said deed was made to save Dotson harmless, is stated to be $3,200. The negroes were worth about $3,500.
Upon investigation, the debts and liabilities recited in the deed actually amount to only about $2,700. The amount due from Lucas, as guardian of the ihildren of Samuel Johnson upon taking the account, amounted to $1,040 instead of $2,000 as recited in the deed. It also appears that the guardian’s bond executed by Lucas and by Dotson as his surety, is blank as to the penalty.
It also appears that on the 8th of January, 1842, Lucas conveyed the same negroes to Dotson by an absolute bill of sale for the consideration expressed in the deed of $4,000: but no other or further consideration actually passed between the par- *316 lies, iban is expressed in ihe deed of mortgage; — nor was the said deed intended by the parties to be anything but a security for the debts and liabilities mentioned in the mortage.
The defendant Dotson is the son-in-law of Lucas, and had purchased during the year 1841, two other negroes for which he took bills of sale; which purchases are also attacked in this bill for fraud; but it is not now urged in argument that they were fraudulent.
Upon the above facts it is insisted that the deeds of the 3d and 8th of January, 1842, are fraudulent, and should be set aside.
The principle ground relied on, is the statement in the deed of mortgage that the liability of Lucas as the guardian of Johnson’s children was $2,000 dollars, when in truth it turns out to be half that sum; and the case of Peacock vs. Tompkins, Meigs R. 317, is relied on as decisive upon this point.
In the case of Peacock vs. Tompkins, the deed recited two notes, amounting to $500, which it asserted were due, and were intended to be secured by conveyance — when in fact, no such sums were due; and the notes were only given to cover advances that were to be made afterwards. This court held these facts to be conclusive of an intention to hinder and delay creditors; and that the deed being fraudulent for that reason, could not stand as a security for the sums actually due.
But we think the question is a very different one here. It is true, the deed states that the liability to Johnson’s heirs, amount to about $2,000: but it does not profess to state with precision the existence and amount of the debt — as in the case of Peacock vs. Tompkins. Here Lucas was guardian, and it does not appear that any settlement had been made, by which he could have accurate knowledge of the amount he would owe his ward. It was a subject about which he might well be mistaken — and there is no evidence that he knew what the indebtedness actually was. In this state of uncertainty, when the deed does not assume to state the amount with accuracy; we think the statement, that it was about $2,000, when only half that sum is actually due, does not furnish evidence of intentional fraud.
*317 The complainant’s counsel insists, that the statement in Dotson’s answer, that the negroes mortgaged, were left in the possession of Lucas, with the intention that he might make money thereby and pay his debts, is an admission that it is fraudulent.
We do not so construe this statement. If a deed be otherwise fair and bona fide, the intention of the vendee to benefit the vendor, cannot make it fraudulent. Tf there be a secret trust for the benefit of the vendor, or if the stipulations be intended to hinder and delay creditors, it is fraudulent. But if none of these exist, and the mortgagee is induced to advance his money, and take the mortgage, leaving the property in possession of the mortgagor, from kind feelings, believing the mortgagor will be benefitted thereby, and be better enabled to pay his debts, certainly the existence of such feeling is no evidence of fraud. And this is the sense in which the admission is made.
The relationship between the parties, though a circumstance to awaken suspicion, seeing fraudulent conveyances are most usually made to kindred, is, of itself, no evidence of fraud. The previous purchases, which are not seriously attacked as fraudulent, have no tendency to establish that this mortgage is fraudulent, unless the evidences bad made it doubtful whether the defendant had means at command sufficient to make all the advances these deeds purport that he has made. But the proof shows that the various descriptions of business in which Dotson has been engaged has been profitable, and that he has realized profits sufficient to have made all the advances he alleges.
But it is said the absolute bill of sale of the 8th of January was fraudulent, and that it reflects upon the mortgage of the 3d of that month, and is evidence that the mortgage was also fraudulent. The parties do not rely on this bill of sale, and if they did, it unquestionably could not stand. It is absolute on its face, and the negroes were left in the possession of Lucas; and an additional consideration to that exjrressed in the mortgage is stated, no part of which was paid.
And this circumstance of the bill of sale, thus executed, so soon after the mortgage was made, it must be owned, casts sus *318 picion upon the fairness of the mortgage. But as the liabilities mentioned in the mortgage, are shown to be really due, and there is no evidence that Dotson received any money or effects from Lucas, by which to aid him in making these advances, while his own means are shown to have been ample for that purpose, we can only say that the bill of sale is a suspicious circumstance; it is not proof that the mortgage was fraudulent. We are therefore of opinion, that the deed of mortgage is a valid security for the debts really due, and the liabilities actually existing.
2. The complainants insist, that as the guardian’s bond is blank as to the penalty, it is void, and creates no liability on Dotson, and that the claim of Johnson’s heirs should not be taken into the account.
Although it be true, that the omission to insert a penalty in the bond, would prevent a recovery at law, 9 Law, Lib. 1, yet it does not follow that there is no remedy in equity. The parties signed and sealed this instrument as a bond, stipulating for the performance by Lucas, of the duties of guardian; and in thus signing and sealing this instrument, they intended to execute a lawful bond foi the guardianship of these wards; but by mistake or oversight, the clerk failed to insert the penalty.
By reason of the execution of this bond, Lucas obtained possession of the estate of his wards, and has acted under his appointment as their guardian — himself and his sureties, considering themselves bound by this bond; and the one has given and the other has accepted an indemnity in the execution of this mortgage, upon the assumption of its obligatory force.'
Under all these circumstances, Dotson, as surety for this guardian, would not be heard in a Court of Chancery, were he now urging the objection made by the complainants, against his liability upon the bond; and much less, will the complainants be heard against the claim of these infants, coupled as it is with the admission of Dotson, that he is liable.
This is a much stronger case for holding that the security is liable, than the case of Weisner vs. Blaikley, 1 Jh. ch. Rep. 60 7, or the case of Armistead vs. Bozman, 1 Ird. Eq. Rep. 117, which were cited at the bar. In both those cases the *319 guardian’s bond was made payable to different persons, than those, who by the statute, should have been the payee. In the former case, the court said, “that when the intention is manifest, it will always relieve against mistakes in agreements, and that as well in a case of surety, as in any other case. It would be intolerable that such a mistake should prejudice or destroy the rights of infants.
Both those cases were suits against the sureties for the guardian, and were resisted by them; and in the case of Armistead vs. Bozman, it had been determined that the parties were not liable at law; nevertheless in both cases, the bonds were held to be obligatory in equity. But here, the surety does not resist, but acknowledges his liability, and with these infants, now insists on the existence of that liability, and asks that they may have the benefit of the indemnity provided in this mortgage.
The case is much stronger therefore, than either of the cases referred to: and we think, in the language of the case of Weisner vs. Baily, “it would be intolerable that such a mistake should prejudice or destroy the rights of these infants.”
Let the decree be affirmed.